IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | |
|---|---|
| SAFA ELHASSAN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )        1:12CV1039 |
| | ) |
| THE PROCTOR & GAMBLE | ) |
| MANUFACTURING COMPANY and | ) |
| XLC SERVICES, LLC, | ) |
| | ) |
| Defendants. | ) |


<u>**MEMORANDUM OPINION AND ORDER**</u>

**OSTEEN, Jr., District Judge**

Presently before the court is the Motion to Dismiss for failure to state a claim filed by Defendant XLC Services, LLC (Doc. 8), which was filed in response to Plaintiff's Complaint (Doc. 1). Plaintiff has since filed an Amended Complaint and Demand for Trial by Jury. (Doc. 17.)[1] While a few of Defendant's minor points have thereby been rendered moot, Defendant's major arguments for dismissal remain viable. For the reasons that follow, the court will grant the motion to dismiss in full.

---

[1] Pursuant to this court's order (Doc. 16) granting Plaintiff's motion to amend her complaint, this court found that those issues raised in Defendant's motion to dismiss (Doc. 8) were ripe for ruling without further briefing by the parties.

## I.    BACKGROUND

The following facts are presented in the light most
favorable to Plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009).

Plaintiff is a female whose religion is Islam, and whose
country of origin is the Republic of Sudan. (Amended Complaint
("Am. Compl.") (Doc. 17) ¶ 3.) Defendant XLC Services, LLC
("Defendant") is a staffing agency that employed Plaintiff and
assigned her to work for Defendant The Proctor & Gamble
Manufacturing Company ("P&G") in Guilford County, North
Carolina. (Id. ¶¶ 4, 12.) Although P&G maintained a blanket
policy prohibiting workers from wearing jewelry on the job site
(id. ¶ 16), Plaintiff consistently wore her wedding ring to work
pursuant to her religious beliefs.  (Id. ¶ 17.) Other employees
of different religions and national origins also regularly wore
jewelry under their clothing and/or protective wear, apparently
in violation of the policy, but were not punished or searched.
(Id. ¶ 18.) Plaintiff also routinely wore a hijab – a head and
neck wrap worn by Muslim women – in conformity with her
religious beliefs. (Id. ¶ 19.)

On or about September 5, 2011, Ernestine Wilson ("Wilson"),
a "shift leader" for P&G (id. ¶¶ 22, 41), "forcibly search[ed]"
Plaintiff for jewelry by removing Plaintiff's hand from her

pocket against her will. (Id. ¶ 22.)  Wilson also "forcibly" removed Plaintiff's hijab in front of her male coworkers (id. ¶ 23) and "threatened [Plaintiff] with future humiliation." (Id. ¶ 24.)  Wilson had previously been involved in a "friendly, physical, and/or romantic relationship" with another coworker (id. ¶ 38), who had been fired after Plaintiff brought a sexual harassment complaint against him. (Id. ¶ 37.)

Plaintiff subsequently reported Wilson's actions to both P&G and Defendant, and Wilson was suspended from work from September 7, 2011 through September 11, 2011. (Id. ¶¶ 25, 29.) Wilson and Plaintiff were also assigned to different shifts from September 12, 2011 through September 14, 2011 "so that they would have minimal contact while working." (Id. ¶ 30.) At one point, a P&G human resources employee "pressured" Plaintiff to accept Wilson's apology. (Id. ¶ 27.)  Plaintiff refused to do so because "she felt the apology to be insincere." (Id.) On September 16, 2011, after receiving notice that P&G was going to remove Plaintiff from her position, Defendant terminated Plaintiff's employment. (Id. ¶ 33.)

## II.  LEGAL STANDARD

Defendant has moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must allege "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). When ruling on a Rule 12(b)(6) motion, a court must accept the complaint's factual allegations as true. Id. However, a court does not have to accept as true mere legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).[2]

## III. ANALYSIS

Plaintiff has alleged five causes of action against Defendant under Title VII of the Civil Rights Act of 1964, as well as a sixth cause of action for negligence under North

---

[2] See § III.B, infra, for a more specific discussion of pleading requirements in the Title VII disparate treatment context.

Carolina state law.[3]  Defendant has moved to dismiss all six

claims on various grounds; those grounds are summarized as

follows:

1.  Plaintiff's Title VII hostile work environment claims

based on religious harassment (First Cause of Action) and sexual

discrimination (Fifth Cause of Action) should be dismissed

because Plaintiff has failed to allege that Defendant had the

authority to take "corrective steps" against a P&G supervisor

and has not otherwise established that the P&G supervisor's

conduct could be imputed to Defendant. (Def.'s Mem. in Supp. of

Mot. to Dismiss ("Def.'s Mem.") (Doc. 9) at 6, 10.)

2.  Plaintiff's Title VII disparate treatment claims based

on religious discrimination (Second Cause of Action) and

national origin discrimination (Fourth Cause of Action) should

be dismissed because Plaintiff has failed to allege that her

faith had anything to do with Defendant's decision to terminate

her. (Id. at 7, 8-9.)

---

[3] P&G, which was also named as a defendant, has filed
answers to both Plaintiff's Complaint and Amended Complaint
(Docs. 4, 18), but has not filed a motion to dismiss.

3.  Plaintiff's Title VII retaliation claim (Seventh Cause of Action) should be dismissed because Plaintiff has failed to allege either that Defendant knew she was engaging in any protected activity or that Defendant terminated her for engaging in a protected activity. (Id. at 11-12.)

4.  Plaintiff's claim that Defendant negligently terminated her without adequate investigation (Eighth Cause of Action) should be dismissed because Plaintiff's employment was at-will, and Defendant had no duty to conduct an investigation. (Id. at 13-14.)

This order addresses each of these arguments in turn and groups relevant claims together for discussion and analysis.

## A.   Religious Harassment and Sexual Discrimination

Plaintiff's claims of "religious harassment" (Am. Compl. (Doc. 17) at 8) and "sexual discrimination" (id. at 10) are specific forms of the more general hostile work environment claim allowed by Title VII.  See 42 U.S.C. § 2000e-2(a)(1) (2013).  In order to prevail on these claims, Plaintiff must show (1) that she was harassed because of her sex and/or religion; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an

abusive working environment; and (4) that some basis exists for imputing liability to the employer.  See Smith v. First Union Nat'l Bank, 202 F.3d 234, 241 (4th Cir. 2000). Defendant's Memorandum supporting its motion to dismiss focuses solely on the final element. (Def.'s Mem. (Doc. 9) at 5-6.)

When an employee has been harassed in the workplace, "'the employer may be liable . . . if it knew or should have known about the harassment and failed to take effective action to stop it.'" E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 669 (4th Cir. 2011) (quoting Ocheltree v. Scollon Prods., 335 F.3d 325, 333–34 (4th Cir. 2003) (en banc)); see also Howard v. Winter, 446 F.3d 559, 565 (4th Cir. 2006). "Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d

306, 319 (4th Cir. 2008) (internal quotation marks omitted).[4]

There is no "exhaustive list" or "particular combination" of

remedial measures that an employer must implement to insulate

itself from liability.  Xerxes, 639 F.3d at 669 (citing E.E.O.C.

v. Cent. Wholesalers, Inc., 573 F.3d 167, 178 (4th Cir. 2009)).

Factors include "the promptness of the employer's investigation

_____

[4] Defendant makes a preliminary argument that because Wilson
was employed not by Defendant, but by P&G, Defendant had no
authority to "take corrective steps" against her and cannot be
held liable. (Def.'s Mem. (Doc. 9) at 6.) However, the lack of
an agency relationship between Wilson and Defendant is an
insufficient basis for dismissing Plaintiff's claim. The
relevant question is not whether Defendant can be held
vicariously liable for Wilson's actions; instead, the question
is whether Defendant's own action or inaction after learning of
the harassment provides a direct basis for Title VII liability.
Mikels v. City of Durham, N.C., 183 F.3d 323, 329 n.4 (4th Cir.
1999) ("It is now settled that this failure-to-act-after-notice
standard is one for imposing Title VII liability on employers
for their direct negligence rather than on respondeat superior
or other 'imputed' liability principles." (citing Burlington
Indus., Inc. v. Ellerth, 524 U.S. 742 (1998))). The fact that
Wilson was not Defendant's employee is therefore irrelevant. See
Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 685
(M.D.N.C. 1997) ("[I]t is well established that employers can be
liable for the harassment of employees by persons who are not
employees of the charged employers."); 29 C.F.R. § 1604.11(e)
(2013) (providing, in the sexual harassment context, that "[a]n
employer may also be responsible for the acts of non-employees
. . . where the employer ... knows or should have known of the
conduct and fails to take immediate and appropriate corrective
action.").

when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective." Id.  Importantly, "when an employer's remedial response results in the cessation of the complained of conduct, liability must cease as well." Spicer v. Commonwealth of Va. Dep't of Corr., 66 F.3d 705, 711 (4th Cir. 1995); see also Mikels, 183 F.3d at 330 ("We have not required that particular remedial responses be the most certainly effective that could be devised and have given great weight to the fact that a particular response was demonstrably adequate to cause cessation of the conduct in question." (quoting Spicer, 66 F.3d at 710-11)); Knabe v. Boury Corp., 114 F.3d 407, 411–12 n.8 (3rd Cir. 1997) ("A remedial action that effectively stops the harassment will be deemed adequate as a

matter of law.").[5]

Here, the Amended Complaint demonstrates conclusively that Defendant was informed of the encounter between Plaintiff and Wilson (Am. Compl. (Doc. 17) ¶ 25), that Defendant began a prompt investigation (id. ¶ 26; see id. ¶ 29), that Wilson received some type of counseling, after which she tendered an apology (id. ¶ 27), that Wilson was suspended from work from September 7 to September 11 (id. ¶ 29), and that Plaintiff and Wilson were placed on different shifts from September 12 through September 14 and Plaintiff was terminated on September 16. (Id.

---

[5] There is at least one exception to this rule, but it appears in a case distinguishable on the facts. See Paroline v. Unisys Corp., 879 F.2d 100, 106-09 (4th Cir. 1989) (holding that a reasonable finder of fact could determine that the employer's remedial measures were insufficient, even though the harassment had not recurred prior to the victim's resignation one month after making the complaint). In Paroline, the court was concerned because the defendant "had received complaints well before [plaintiff] started work . . . that [the harasser] had made sexually suggestive remarks to and had engaged in unwelcome touching of female clerical workers." Id. at 103. In addition, "[the defendant's managers] openly joked about female workers' sexual harassment complaints after ostensibly warning [the harasser] and other male employees not to engage in harassment of women." Id. at 107. The court was dissuaded from applying the traditional rule that liability ceases when the harassment does, because it was not convinced that the employer's actions were "reasonably calculated to end the harassment" given the circumstances. Id. at 106 (internal citations omitted). Indeed, the court suggested that a reasonable finder of fact might even infer that the employer intended the measures to be "nothing more than a slap on the wrist or perhaps even an outright sham." Id. at 107. Here, no comparable warning signs are alleged in the complaint, so Paroline's applicability is minimal.

¶¶ 30-32). There is also no indication that Wilson engaged in
any further bad acts towards Plaintiff after these steps were
taken.[6] In light of these facts, Plaintiff has failed to allege
facts sufficient to demonstrate that Defendant "failed to take
effective action to stop [the harassment]."[7] Xerxes Corp., 639
F.3d at 669 (quoting Ocheltree v. Scollon Prods., 335 F.3d at
333–34). This conclusion applies regardless of whether Wilson's
actions were motivated by Plaintiff's religion, sex, or both.
Consequently, there is no "basis . . . for imputing liability to

_____

[6] Plaintiff alleges, "[u]pon information and belief," that
"Wilson had previously been involved in a discriminatory
altercation with a different employee, after which neither P&G
nor [Defendant] had taken any supervisory or training steps
toward ensuring such an incident would not occur in the future
or that it would be dealt with appropriately if it did occur."
(Am. Compl. (Doc. 17) ¶ 39.) However, these allegations of prior
discrimination are devoid of any facts showing that Defendant
either knew of or had a duty to respond to any such misconduct.
Plaintiff does not state that the prior victim was Defendant's
employee or that any other link existed between Defendant and
Wilson or between Defendant and the alleged victim.  Therefore,
this allegation is of little value to the court when it comes to
judging Defendant's response to Wilson's actions towards
Plaintiff.

[7] Plaintiff does state, while listing the elements of her
causes of action, that "[n]either P&G nor [Defendant] took
appropriate corrective steps to address th[e] harassment." (Am.
Compl. (Doc. 17) ¶¶ 45, 60.) However, this is exactly the type
of "conclusory statement" frowned upon by Twombly and Iqbal. See
Iqbal, 556 U.S. at 678, Twombly, 550 U.S. at 555. Consequently,
this court will look at the specific facts alleged and rely on
those to determine whether Plaintiff has stated a plausible
claim that Defendant's actions were insufficient.

[Defendant]," <u>Smith</u>, 202 F.3d at 241, and these two hostile work environment claims must be dismissed.

### B. Religious and National Origin Discrimination

Plaintiff also makes two claims of Title VII disparate treatment on the basis of religion and national origin. Plaintiff relies on the inferential approach to disparate treatment claims outlined in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). The elements of such a claim are: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. <u>Coleman v. Md. Court of Appeals</u>, 626 F.3d 187 (4th Cir. 2010), <u>aff'd</u>, ____ U.S. ____, 132 S. Ct. 1327 (2012). Defendant's memorandum in support of its motion to dismiss focuses on the final element. (Def.'s Mem. (Doc. 9) at 6-7.)

At the 12(b)(6) stage, a Title VII plaintiff is not required to plead facts sufficient to prove each element of her case, <u>see</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), but she is "required to allege facts that support a claim for relief." <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 764-65 (4th Cir. 2003). These "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Twombly</u>, 550 U.S. at 555, and the complaint must "state[] a

plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 556 U.S. at 679.

A claim of disparate treatment necessarily requires the court to compare Plaintiff's treatment with that of others. Without sufficient facts allowing this comparison, Plaintiff's bare assertion that "[o]ther similarly-situated employees of different faiths were treated more favorably than [Plaintiff]," (Am. Compl. (Doc. 17) ¶ 50), is nothing more than a "[t]hreadbare recital[]" of an element of the cause of action, which is not enough to survive a motion to dismiss. Iqbal, 556 U.S. at 678.

In Coleman, for instance, the Fourth Circuit affirmed the District Court's 12(b)(6) dismissal even though the plaintiff alleged both that he "was treated differently as a result of his race than whites" and specifically identified a Caucasian coworker who allegedly engaged in contrarian workplace behavior but was not punished. Coleman, 626 F.3d at 191. The court based its decision on the absence of facts showing that the plaintiff

and his coworker were "actually similarly situated," which

prevented a proper comparison of their treatment. Id.[8]

Here, Plaintiff's complaint contains fewer factual

allegations than the Coleman complaint did. It does not describe

a single instance in which Plaintiff's non-Muslim, non-Sudanese

coworkers were treated more favorably under similar

circumstances by this Defendant, and does not otherwise allege

any facts allowing the court to make an inference of disparate

treatment. See, e.g., Swierkiewicz, 534 U.S. at 514 (holding

that plaintiff's complaint was sufficient in part because it

"included the ages and nationalities of at least some of the

relevant persons involved with his termination"). In lieu of

specific factual allegations, Plaintiff instead invites the

court to infer "that [Defendant] is unlikely to terminate every

employee of every faith for discriminatory actions taken against

---

[8] See also Bass, 324 F.3d at 765 (4th Cir. 2003) (deeming
the single assertion that the employer discriminated against the
plaintiff "because of her race and sex" insufficient to state a
claim in the absence of supporting facts); Bala v. Commonwealth
of Va. Dep't of Conservation & Recreation, 532 Fed. Appx. 332,
335 (4th Cir. 2013) (affirming the dismissal of a claim where
the plaintiff "provided details and the relevant dates of his
employment . . . [but] did not provide the nationalities of any
of the relevant persons involved with [the] decision to lay him
off . . . ."); Wise v. Vilsack, 496 Fed. Appx. 283, 286 (4th
Cir. 2012), cert. denied, ____ U.S. ____, 134 S. Ct. 60 (2013)
(affirming dismissal where the complaint "[did] not set forth
any facts alleging that non-minority credit applicants were
treated different[ly] than [the plaintiffs] were treated").

that employee," and "that it is unlikely that this is the first time any employee of [Defendant] has alleged discrimination." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (Doc. 13) at 8-9.) The court is apparently supposed to reach the conclusion that there has probably been at least one prior instance in which a non-Muslim, non-Sudanese employee leveled a charge of harassment and was not subsequently terminated, and was thereby treated more favorably than Plaintiff. Plaintiff justifies this chain of inferences by contending that without the benefit of discovery, she can "not conjure the employee records of every employee who has alleged assault or discrimination while working for [Defendant] in order to find the disposition of their matters." (Id. at 9.)

Plaintiff overstates her obligations under the Twombly/Iqbal standard. She is not required to parse through records of "every employee who has alleged assault or discrimination," but she is required to provide the court with a minimal factual basis for finding that a cause of action for disparate treatment actually applies to her case, not merely that it is conceivable that it might apply. In other words, she must "nudge[] [her] claims across the line from conceivable to plausible" by alleging specific facts in support of her claim. Twombly, 550 U.S. at 570. This court will not speculate as to

the nature or number of facts that would constitute a minimally-sufficient claim; here, it is enough to say that Plaintiff's complaint does not meet the standard established by Fourth Circuit precedent.

Furthermore, the circumstances of Plaintiff's employment suggest that Defendant XLC had a non-discriminatory reason to terminate Plaintiff, making the absence of any specific facts to support a discrimination claim even more notable. Specifically, Plaintiff was employed by Defendant from 2004 to 2011, pursuant to "a contract under which she spent all of her time working for [defendant] P&G at P&G's facilities." (Am. Comp. (Doc. 17) ¶ 12.) "P&G controlled the means and manner of [Plaintiff's] work, and [Plaintiff] was expected to abide by P&G rules and regulations governing employee actions and behavior." (Id. ¶ 14.) Plaintiff further alleges that "XLC told her that they had received notice from P&G that [Plaintiff] was to be terminated from her project at P&G," and "XLC then terminated [Plaintiff's] employment . . . ." (Id. ¶ 33.) There are no allegations that P&G did not actually intend to terminate Plaintiff, or that Defendant had other work for Plaintiff upon her termination from P&G, nor are any facts alleged which might suggest that Defendant terminated Plaintiff for any reason other than the fact she had been terminated from the project by P&G.

Thus, although Plaintiff alleges in conclusory fashion that she was discriminated against by Defendant, the specific facts fail to raise an inference of discrimination. Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006) ("[W]hen a plaintiff's complaint sets forth facts in support of his claim for relief and tracks the language of the applicable cause of action, the legal conclusions 'are not talismanic' because 'it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." (quoting Bass, 324 F.3d at 765)). This court recognizes that a Title VII plaintiff is not required to plead facts that constitute a prima facie case. See Swierkiewicz, 534 U.S. at 510, 515. However, because Plaintiff's complaint suggests at least one plausible, non-discriminatory reason for Plaintiff's termination by Defendant, the failure of Plaintiff to allege any facts to support at least an inference of discriminatory treatment results in this court's conclusion that Plaintiff has failed "to allege facts sufficient to state all the elements of her claim." Jordan, 458 F.3d at 346.

Since Plaintiff's alleged causes of action for disparate treatment based on religion and national origin as to the moving defendant fail to rise "above the speculative level," Twombly, 550 U.S. at 555, they must be dismissed.

C.    Retaliation

Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] . . . ."[9] 42 U.S.C. § 2000e-3(a) (2010). Title VII "is not a general bad acts statute, however, and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011). In order to establish a prima facie case of retaliation, a plaintiff must prove: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013) (citing E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005)).

Plaintiff alleges that she was fired by Defendant "as a result of her continued refusal to accept Wilson's apology." (Am. Compl. (Doc. 17) ¶ 66.) Defendant argues that refusing to

_____

[9] Title VII also prohibits employers from discriminating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a)(2010).  Since this "participation" clause is not implicated by Plaintiff's claims, it is not discussed in this order.

accept a harasser's apology is not a "protected activity" for purposes of the Title VII retaliation claim. (See Def.'s Mem. (Doc. 9) at 12.)

"[T]o show 'protected activity,' the plaintiff in a . . . retaliation case need 'only . . . prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring.'" Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003) (quoting Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir. 1990)). This requires that the plaintiff: (1) have a subjective belief that the employer is engaging in an unlawful employment practice; and (2) that the belief is objectively reasonable in light of the facts. See id. at 321; see also Coleman v. Loudoun Cnty. Sch. Bd., 294 Fed. Appx. 778, 781 (4th Cir. 2008).

In this case, even if Plaintiff had a subjective belief that Defendant was engaging in an unlawful employment practice by asking her to accept Wilson's apology, that belief was not objectively reasonable. Encouraging two employees to settle their differences civilly by having one employee apologize is not a discriminatory practice made unlawful by Title VII. See Caldwell v. Jackson, No. 1:03CV707, 2009 WL 2487850, at *8 (M.D.N.C. Aug. 11, 2009) ("In any event, [the employer's] response to [the] conduct was prompt and reasonably calculated

to end it. [A manager] immediately met with [the harasser] and counseled him, and [the harasser] soon thereafter apologized for his conduct."); cf. Freeman v. Dal-tile Corp., No. 5:10-CV-522-BR, 2013 WL 1010601, at *6 (E.D.N.C. Mar. 14, 2013) (noting without comment that the defendant-employer had encouraged the plaintiff to accept a "public apology" from the harasser). Consequently, "opposing" the practice (e.g., by refusing to accept the apology) is not a "protected activity" under the statute, and Plaintiff's claim must be dismissed.

### D.  Common Law Negligence

Plaintiff's final cause of action against Defendant alleges a breach of the common law duty of care. (Am. Compl. (Doc. 17) at 11.) Specifically, Plaintiff alleges that Defendant failed to conduct an "adequate investigation into the incident which occurred between Wilson and [Plaintiff] or into measures which could be appropriately taken to keep [Plaintiff] as an employee." (Id. ¶ 70.)

It is undisputed that Plaintiff was an at-will employee. (See Def.'s Mem. (Doc. 9) at 13; Pl.'s Resp. (Doc. 13) at 13.) As such, Defendant had the right to discharge her for any rational or irrational reason, with or without notice, so long as that reason was not illegal (e.g., on the basis of race, sex, religion, or national origin in violation of Title VII, or in

bad faith in violation of public policy). See Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331-32, 493 S.E.2d 420, 422 (1997); Soles v. City of Raleigh Civil Serv. Comm'n, 345 N.C. 443, 446, 480 S.E.2d 685, 687 (1997); Harris v. Duke Power Co., 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987). Plaintiff argues that, notwithstanding this substantial freedom to terminate, an employer is obligated to conduct an investigation once it has "notice of unlawful conduct against the employee which is the true impetus of the . . . termination . . . ." (Pl.'s Resp. (Doc. 13) at 13 (citing Riley v. Dow Corning Corp., 767 F. Supp. 735 (M.D.N.C. 1991))).

In Riley, the plaintiff was fired for allegedly failing to perform product tests and falsifying records to cover up that failure. Riley, 767 F. Supp. at 737. The plaintiff, who claimed that several of his coworkers had conspired to orchestrate his termination, sued his employer for negligently failing to investigate the supposed conspiracy before terminating him. Id. In analyzing this claim, the Riley court first emphasized that the plaintiff's at-will status "limited" his claim to relief because employers are allowed to discharge at-will employees "for arbitrary, even irrational, purposes." Riley, 767 F. Supp. at 741. The court further observed that, "[c]oupled with the legal authority against his position, Riley failed to inform

- 21 -

[his employer] about the alleged conspiracy against him . . . ."
Id. Given this combination of law and facts, the court found
that the employer "should not have been required to conduct any
additional investigation." Id.

From these few lines, Plaintiff argues that North Carolina
imposes a general common law "duty to investigate" on employers
who have "notice of unlawful conduct against the employee which
is the true impetus of the potential upcoming termination
. . . ." (Pl.'s Resp. (Doc. 13) at 13.) This court rejects
Plaintiff's argument that such a general "duty to investigate"
exists. At most, Riley reaffirms that an employer has wide
discretion to terminate at-will employees for non-illegal
reasons, but that it may have a duty to confirm that these
forbidden motives have not infiltrated the employer's *own*
termination process. In other words, the relevant inquiry
remains whether the employer was motivated by a discriminatory
purpose. Aside from Plaintiff's contention that Defendant
unlawfully retaliated against her (discussed in part III.C,
supra), the complaint contains no other accusations or facts
suggesting that Defendant acted with an improper motive.
Instead, Plaintiff submits that Defendant, as the staffing
agency employing Plaintiff, may be liable for "condoning" P&G's
unlawful conduct. (Pl.'s Resp. (Doc. 13) at 13.) This quasi-

vicarious liability claim has no support in the plain language of <u>Riley</u> or in any subsequent North Carolina case law known to this court. Since Plaintiff fails to state a claim for common law negligence, this cause of action must be dismissed.

IV.  **CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that the Motion to Dismiss filed by Defendant XLC Services, LLC (Doc. 8) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Joint Motion to Stay Discovery (Doc. 19) is **DENIED AS MOOT.**

This the 27th day of March, 2014.

_____
United States District Judge